IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No.: 3:17-cv-458

| | |
|---|---|
| SAFETY NATIONAL CASUALTY CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>GARLOCK SEALING TECHNOLOGIES LLC; ENPRO HOLDINGS, INC.; and GARRISON LITIGATION MANAGEMENT GROUP, LTD.;<br><br>Defendants. | **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** |

NOW COMES Plaintiff, Safety National Casualty Corporation ("Safety"), pursuant to Federal Rule of Civil Procedure 15(a)(1) and hereby files this Amended Complaint for Declaratory Judgment as a matter of right, without waiver of its rights to demand arbitration as set forth herein or otherwise, and prays the Court as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Safety is a corporation organized and existing under the laws of the State of Missouri with its principal place of business in Missouri.

2. Defendant Garlock Sealing Technologies LLC ("Garlock") is a North Carolina limited liability company. Garlock's sole member is Defendant EnPro Holdings, Inc., a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located in North Carolina.

3. Defendant EnPro Holdings, Inc. ("EnPro Holdings") is a corporation organized and existing under the laws of the State of North Carolina with its principal place of business located in North Carolina. Upon information and belief, EnPro Holdings is the successor by

merger to OldCo, LLC, which is the successor by merger of Coltec Industries, Inc. ("Coltec"). Coltec was previously named Colt Industries, Inc. until 1996.

4. Defendant Garrison Litigation Management Group, Ltd. ("Garrison") is a corporation organized and existing under the laws of the State of North Carolina and doing business in North Carolina with its principal place of business in the State of New York.

5. There is complete diversity between Plaintiff and Defendants, and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

6. This Court has personal jurisdiction over the parties.

7. Venue is appropriate in the Western District of North Carolina under 28 U.S.C. § 1391(b)(1) as all Defendants reside within the State of North Carolina and at least one Defendant resides specifically within the Western District of North Carolina. Further, the Modified Joint Plan of Reorganization in case number 10-BK-31607 at § 10.9, to which all Defendants, or their predecessors in interest, are subject, provides that the courts sitting in the Western District of North Carolina have non-exclusive jurisdiction to hear and decide issues concerning the Defendants' Asbestos Insurance Rights.[1]

## FACTUAL BACKGROUND

8. Safety is and at all times hereinafter mentioned was authorized to do business and to write excess insurance in the State of North Carolina.

9. Garlock is a manufacturer of fluid-sealing products, including gaskets and compression packing, used in internal piping and valve assemblies. Claims have been made that

---

[1] "Asbestos Insurance Rights" are defined as "any and all rights, titles, privileges, interests, claims, demands or entitlements to any proceeds, payments, defense costs, indemnification, escrowed funds, initial or supplemental dividends, scheme payments, supplemental scheme payments, causes of action, and choses in action of any Debtor or other Entity with respect to any Asbestos Insurance Policy, any rights under any Asbestos Insurance Agreement, and any rights in any Asbestos Insurance Action."

Garlock's products contain asbestos, and, as a result, Garlock has been sued for claims involving asbestos liability.

10. In 1975 Colt Industries Inc. acquired Garlock; thereafter, Colt Industries Inc. managed and operated Garlock as a direct subsidiary. During this period, it is alleged that Garlock manufactured and sold fluid-sealing products using or containing asbestos.

11. In 1983, Colt Industries Inc. purchased an excess insurance policy from Safety, then known as Safety Mutual Casualty Corporation, policy no. UF 1319 (the "Safety Policy"). The Safety Policy's limit of liability was $5,000,000.00, and the Safety Policy was written to be in excess of $100 million. A copy of the Safety Policy, as reflected in Safety's files, is attached hereto as Exhibit A.

12. The named insured under the Safety Policy was Colt Industries, Inc., and Garlock, as a subsidiary of Colt Industries, Inc., qualified as an additional insured.

13. A key feature of the Safety Policy is the right to require arbitration. The Safety Policy provided that, "As a condition precedent to any right of action under this Policy, any dispute arising out of this Policy shall be submitted to the decision of a board of arbitration." (Exhibit A, ¶ 11.) The Safety Policy further details the arbitration process.

14. The Safety Policy also provided that it was "Following Form of Royal Indemnity's Lead Umbrella Policy #EB102079". A copy of Royal Indemnity's Policy #EB102079, as provided to Safety's counsel by Defendants, through their representatives, is attached hereto as Exhibit B.

15. From 1983 to the present, Colt Industries Inc., Coltec, and/or Garlock, according to Defendants' own estimate, have been named in approximately 900,000 lawsuits alleging injuries based on exposure to asbestos.

3

16. Upon information and belief, Garrison was formed in 1996 to manage the defense and resolution of the asbestos claims asserted against Garlock and Colt Industries Inc. (by that time, renamed to Coltec Industries, Inc.). Garrison agreed to undertake all future responsibility for the resolution of asbestos claims against Garlock and further agreed to indemnify Garlock for any losses it incurred as a result of asbestos claims and to assume the defense and settlement of any such asbestos claims.

17. Upon information and belief, Garlock agreed to transfer certain assets to Garrison to fund the resolution of asbestos claims, which apparently included Garlock's purported right to receive payments under any insurance policies that provided coverage for asbestos claims against Garlock. This transfer purported to include rights under the Safety Policy. Garlock claimed to retain a security interest in the transferred insurance assets.

18. Before Garlock and Garrison filed their voluntary petitions for bankruptcy, and no later than April 30, 2010, Garlock and Coltec issued an invoice to Safety demanding the full policy limits of the Safety Policy. A copy of the invoice issued to Safety is attached hereto as Exhibit C.

19. Defendants assert that Safety's policy is an Asbestos Insurance Policy.

20. Safety has previously informed Garlock that it disagreed with Garlock's position on coverage and issued a reservation of rights letter, reserving its rights under the Safety Policy and at law. A copy of Safety's reservation of rights letter is attached hereto as Exhibit D.

21. In 2016, Coltec merged with OldCo, and, in the merger, OldCo purportedly obtained rights to the Safety Policy. Upon information and belief, in 2017, OldCo purportedly merged with EnPro Holdings, and EnPro Holdings may have obtained rights to the Safety Policy.

22. All Defendants, or their predecessors in interest, have asserted claims on and under the Safety Policy and/or claim rights under the Safety Policy. Safety does not believe that Defendants have satisfied the necessary conditions precedent of the Safety Policy to obtain its limit of liability.

23. Defendants, or their predecessors in interest, all filed petitions for voluntary bankruptcy in the Western District of North Carolina, which were ultimately consolidated for proceeding through the Bankruptcy Court in Case No. 10-BK-31607.

24. As part of the bankruptcy proceeding, Garlock obtained a ruling that estimated its liability for present and future mesothelioma claims. In its ruling, the Bankruptcy Court determined that the value of the present and future mesothelioma claims was not the $1.3 billion plus value argued by asbestos plaintiffs but the $125 million value that Garlock itself contended. In obtaining this estimation of Garlock's asbestos liabilities, Garlock was able to persuade the Bankruptcy Court that the asbestos plaintiffs had manipulated and inflated the value of Garlock's asbestos liabilities in the tort system in the decade before it filed for bankruptcy, and that, as a result, Garlock had grossly overpaid its asbestos liabilities in the tort system.

25. On or about June 12, 2017, Defendants, or their predecessors in interest, obtained confirmation of a plan in the bankruptcy proceeding that required, among other things, Garlock, Garrison and/or OldCo, to fund a trust to pay Garlock's and OldCo's asbestos liabilities.

26. Defendants have asserted that, even if the monies demanded prior to the filing of their bankruptcies is not owed by Safety, Safety will eventually have to reimburse Defendants for a portion of the monies used to fund the trust. Safety has continued to assert that Defendants have failed to satisfy all necessary conditions precedent of the Safety Policy.

5

27. In prior communications, Defendants, or their predecessors in interest, through their various representatives, have asserted that Safety is not entitled to demand arbitration in order to resolve all issues arising out of the Safety Policy, which prompted Safety to file the original Complaint.

28. Contemporaneously with the filing of the Complaint on August 2, 2017, Safety issued a letter to Defendants demanding arbitration of Defendants' claims to entitlement of the limit of liability of the Safety Policy. A copy of the August 1, 2017 arbitration demand letter is attached hereto as Exhibit E.

29. On August 3, 2017, Defendants' insurance coverage counsel contacted counsel for Safety and requested a copy of the arbitration demand letter, which counsel for Safety provided that same day.

30. On August 9, 2017, Defendants, through their insurance coverage counsel, sent a letter to counsel for Safety and provided Safety's counsel with Exhibit F. Defendants' insurance coverage counsel maintains that Exhibit F forms a part of the Safety Policy.

31. While Safety has not been able to locate a copy of Exhibit F in its files, based on the information that has now been provided, Safety is informed and believes that Exhibit F forms a part of the Safety Policy. Exhibit F does not affect Safety's right to demand arbitration under paragraph 11 of the Safety Policy, as Safety's right to arbitration does not vary from and is not inconsistent with the Royal Indemnity Policy.

32. Defendants continue to refuse to arbitrate their claims for entitlement to the limit of liability of the Safety Policy and Safety's defenses thereto.

**FIRST CLAIM FOR RELIEF: DECLARATORY RELIEF – ARBITRATION**

33. Safety incorporates by reference the preceding paragraphs as if fully set forth herein.

34. The Safety Policy explicitly provides: "[A]ny dispute arising out of this Policy shall be submitted to the decision of a board of arbitration." (Exhibit A, ¶ 11.)

35. The disputes between the parties are as follows:

   a. Defendants, or their predecessors in interest, have claimed coverage under the Safety Policy.

   b. Safety does not believe that Defendants are entitled to the limit of liability under the Safety Policy, and avers that Defendants have failed to exhaust the available and underlying coverage, have failed to apply the per claim deductible, have failed to establish the Safety Policy has been implicated, and that other legal and policy defenses preclude Defendants' claims for coverage.

   c. Defendants further contend that Safety does not have the right to demand arbitration under the Safety Policy; whereas, Safety insists that it is entitled to demand arbitration.

   d. The parties' disputes may be more extensive than described herein, but any and all disputes arise under the Safety Policy and are therefore subject to arbitration.

36. Given the disputes between the parties, as set forth above, including specifically Safety's right to arbitration, there exist actual, live, and justiciable controversies between the parties that can be, and should be, resolved by the declaration of the rights and obligations of the parties.

37. Safety asks this Court for a declaration that it is entitled to demand arbitration under the terms of the Safety Policy. Safety further asks that this Court declare that any disputes concerning Defendants' claims under the Safety Policy are subject to the terms of paragraph 11 of the Safety Policy (Exhibit A, ¶ 11), which provides for arbitration. In addition, Safety asks this Court to declare that any dispute under the Safety Policy must be decided by an arbitration panel, who will declare the rights and duties under the Safety Policy and decide all disputed issues between these parties, and that no Defendant or successor in interest of any Defendant can litigate any dispute under the policy in a court of law.

## SECOND CLAIM FOR RELIEF: PETITION TO COMPEL ARBITRATION

38. Safety incorporates by reference the preceding paragraphs as if fully set forth herein.

39. Pursuant to the terms of the Safety Policy, Safety is entitled to arbitration of any claims arising out of the Safety Policy. (Exhibit A, ¶ 11.)

40. Defendants' purported claim for the limit of liability under the Safety Policy clearly arises out of the Safety Policy and is therefore subject to arbitration.

41. By way of Defendants' position that Safety is not entitled to demand arbitration, Defendants have failed, refused, and neglected to arbitrate their claims for coverage in accordance with the terms of the Safety Policy.

42. Safety therefore requests that the Court compel Defendants pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, to participate in arbitration in accordance with the terms of the Safety Policy.

## THIRD CLAIM FOR RELIEF: ALTERNATIVE CLAIM FOR DECLARATORY RELIEF – COVERAGE

43. Safety incorporates by reference the preceding paragraphs as if fully set forth herein.

44. Without waiving Safety's right to demand arbitration, should there be a final determination by this Court and the Appellate Courts that: (1) Safety is not entitled to arbitrate the existing disputes under its Policy, and (2) Safety is not entitled to compel arbitration and such ruling is confirmed on appeal, then, and only then, Safety would submit that there would exist actual, live, and justiciable controversies between the parties as to their respective rights and obligations as to the limit of liability of the Safety Policy and those controversies can be resolved by the declaration of the rights and obligations of the parties.

8

Case 3:17-cv-00458-RJC-DSC   Document 10   Filed 08/17/17   Page 8 of 11

45. The controversies existing between the parties include the following:

   a. Defendants, or their predecessors in interest, have claimed entitlement to the limit of liability of the Safety Policy.

   b. Safety does not believe that Defendants have satisfied the necessary preconditions to establish entitlement to the limit of liability of the Safety Policy.

   c. Safety further believes that Defendants have failed to exhaust the available and underlying coverage, have failed to apply the per claim deductible, have failed to establish that the Safety Policy has been implicated, and that other legal and policy defenses preclude Defendants' claims for coverage.

46. Accordingly, only in the event that there is a final determination after all appeals that Safety is not entitled to arbitrate the aforementioned disputes and is not entitled to compel arbitration in accordance with the terms of the Safety Policy, then Safety asks this Court to declare that Defendants, and those claiming through Defendants, are not entitled to the limit of liability of the Safety Policy and for the Court to further declare that Safety owes nothing to Defendants for the claims at issue in this action.

## PRAYER FOR RELIEF

WHEREFORE, Safety prays the Court for the following relief:

1. That this Court declare that Safety is entitled to demand arbitration for any claims arising out of the Safety Policy;

2. That this Court declare that the disputes between Safety and Defendants for Defendants' claims of coverage, and Safety's defenses thereto, are subject to arbitration and that any and all disputes must be resolved by arbitration;

3. That this Court compel Defendants, and those who may claim through them, to participate in arbitration as provided in the Safety Policy to determine the parties' respective rights under the Safety Policy;

4. That this Court retain jurisdiction for all post-arbitration proceedings;

5. That Defendants be prohibited from taking any action inconsistent with their agreement to arbitrate;

6. That, should there be a final determination after all appeals that the disputes under the Safety Policy are not subject to arbitration and that Safety is not entitled to compel arbitration, this Court declare that Defendants are not entitled to coverage for the asbestos claims under the Safety Policy;

7. In the event that arbitration is disallowed, a jury trial on all issues so allowable; and

8. For Safety to be awarded its costs, attorneys' fees, and any other remedies as the Court deems proper.

Respectfully submitted this the 17th day of August, 2017.

By: /s/ H. Brent Helms
H. Brent Helms (N.C. State Bar No. 19068)
Attorney for Plaintiff
ROBINSON & LAWING, L.L.P.
101 N. Cherry Street, Suite 720
Winston-Salem, NC 27101
Telephone: 336-631-8500
Facsimile: 336-631-6999
Email: bhelms@robinsonlawing.com

Andrew K. Epting, Jr. (S.C. Bar No. 1908)
Andrew K. Epting, Jr., LLC
Attorney for Plaintiff
46A State Street
Charleston, SC 29401
Telephone: 843-377-1871
Facsimile: 843-377-1310
Email: ake@epting-law.com
**Admitted Pro Hac Vice**

## CERTIFICATE OF SERVICE

I hereby certify that on this date I served a copy of the foregoing **AMENDED COMPLAINT FOR DECLARATORY JUDGMENT** upon the parties listed below by depositing a copy thereof in the United States mail, postage prepaid and addressed as follows:

Garlock Sealing Technologies, LLC
c/o CT Corporation System, Registered Agent
160 Mine Lake Ct., Ste. 200
Raleigh, NC  27615-6417

Garlock Sealing Technologies, LLC
c/o Any Officer, Director or Managing Agent
1666 Division Street
Palmyra, NC  24522-9383

EnPro Holdings, Inc.
c/o CT Corporation System, Registered Agent
150 Fayetteville St., Box 1011
Raleigh, NC  27601-2957

EnPro Holdings, Inc.
c/o Any Officer, Director or Managing Agent
5605 Carnegie Blvd., Suite 500
Charlotte, NC  28209

Garrison Litigation Management Group, Ltd.
c/o CT Corporation System, Registered Agent
160 Mine Lake Ct., Ste. 200
Raleigh, NC  27615-6417

Garrison Litigation Management Group, Ltd.
c/o Any Officer, Director or Managing Agent
349 West Commercial Street, Suite 3050
East Rochester, NY  14445-2417

This the 17th day of August, 2017.

By: /s/ H. Brent Helms
H. Brent Helms (N.C. State Bar No. 19068)
Attorney for Plaintiff
ROBINSON & LAWING, L.L.P.
101 N. Cherry Street, Suite 720
Winston-Salem, NC 27101
Telephone:	336-631-8500
Facsimile:	336-631-6999
Email:	bhelms@robinsonlawing.com