UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:17-cv-00458-RJC-DSC

| | |
|---|---|
| SAFETY NATIONAL CASUALTY CORPORATION, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) ORDER ) |
| GARLOCK SEALING TECHNOLOGIES LLC, et. al, | ) ) ) |
| Defendants, | ) ) ) |
| vs. | ) ) |
| SAFETY NATIONAL CASUALTY CORPORATION, | ) ) ) |
| Counterclaim Defendant, | ) ) |
| and | ) ) |
| STARR INDEMNITY & LIABILITY COMPANY, | ) ) ) |
| Additional Party Defendant. | ) ) ) |

THIS MATTER comes before the Court on Plaintiff Safety National Casualty Corporation's ("Safety's") Motion to Stay and Petition to Compel Arbitration, (Doc. No. 17); its Memorandum in Support, (Doc. No. 18); Defendants' Garlock Sealing Technologies LLC ("GST"), EnPro Holdings, Inc., Garrison Litigation Management

1

Group, Ltd. ("Garrison") Response in Opposition, (Doc. No. 29); Plaintiff's Reply, (Doc. No. 33); and the Magistrate Judge's Order, (Doc. No. 36), denying Plaintiff's Motion to Stay and Compel Arbitration.  Plaintiff has filed an objection to the Magistrate Judge's Order, (Doc. No. 37), to which Defendants filed a timely response, (Doc. No. 41).

I. BACKGROUND

A. Procedural Background

Safety brought this case seeking a declaration that it did not owe coverage under the Safety Policy to Defendants GST, EnPro Holdings, Inc., and Garrison. (Doc. No. 1).  Safety then filed a Motion to Stay and Compel Arbitration on August 30, 2017, arguing that pursuant to the Safety Policy, "any dispute arising out of this Policy shall be submitted to the decision of a board of arbitration" and therefore the court should stay the litigation to allow the parties to first proceed with arbitration. (Doc. No. 17 at 2–3).  Safety also argued in its Motion that because Defendants refused to arbitrate, the court should compel Defendants to arbitrate pursuant to the Safety Policy.  (Doc. No. 17 at 3).

Defendants filed a Response in Opposition to Plaintiff's Motion to Stay, arguing that a provision of the Safety policy effectively deleted the arbitration provision.  (Doc. No. 33).  The Magistrate Judge denied Plaintiff's Motion and agreed with Defendants' argument that because the Royal umbrella policy contained no arbitration provision, the Safety Policy "varied" from Royal and thus the arbitration policy was deleted.  (Doc. No. 36 at 2).

Plaintiff filed an objection to the Magistrate Judge's order, arguing that because the Royal policy is silent on arbitration, the Safety Policy does not vary nor is inconsistent with Royal, and therefore the arbitration clause remains. (Doc. No. 37 at 3–4). Plaintiff also argues that the Magistrate Judge failed to consider the purpose of the Safety Policy as a follow-form insurance policy as well as failed to give deference to federal policy favoring arbitration. (Id. at 10–12).

Defendants responded to Plaintiff's objections, again arguing that the Safety Policy's arbitration clause was deleted by Endorsement #1 and public policy favoring arbitration is not relevant when parties have not agreed to arbitrate in the first instance. (Doc. No. 41). We review the Magistrate Judge's order for clear error or contrariness to law.

B. Factual Background

Plaintiff's Motion to Stay and Petition to Compel Arbitration involves a simple issue. Defendants purchased an underlying umbrella insurance policy from Royal Indemnity Company ("Royal Policy"). (Doc. No. 16-5). This policy did not contain an arbitration clause. (Id.). Defendants also purchased an excess level insurance policy from Plaintiff ("Safety Policy"). (Doc. No. 16-4). This policy *did* contain an arbitration clause. (Id. at 4).

The Safety Policy is a "follow-form" policy. (Doc. No. 37 at 10). Follow-form policies are designed to match the underlying insurance policy with exception to limited provisions. (Id.). Here, the Safety Policy attached a provision called "Endorsement #1." (Doc. No. 16-4 at 6). Endorsement #1 states:

3

> It is agreed that *except only with respect for policy period, premium and limit of liability*, this policy is hereby amended to follow all the terms, conditions, definitions and exclusions of the first layer Umbrella [Royal Policy] and all renewals and replacements thereof. It is further agreed that all preprinted terms and conditions [from the Safety Policy] *are deleted to the extent that they vary from or are inconsistent with the terms and conditions of the first layer Umbrella.*

(Id.) (emphasis added). Plaintiff argued that Endorsement #1 did not delete the arbitration clause found in the follow-form excess insurance Safety Policy. (Doc. No. 18). Defendants argued that the arbitration policy was deleted because the underlying Royal Policy contained no arbitration clause and therefore varied from the Safety Policy. (Doc. No. 29). The Magistrate Judge agreed with Defendant. (Doc. No. 36).

## II. STANDARD OF REVIEW

The district court has authority to assign non-dispositive pretrial matters pending before the court to a magistrate judge to "hear and determine." 28 U.S.C. § 636(b)(1)(A). When reviewing an objection to a magistrate judge's order on a non-dispositive matter, the district court must set aside or modify any portion of that order which is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a). A motion to stay is generally viewed as a non-dispositive motion, and thus is reviewed under Rule 72(a). See Wachovia Bank, N.A. v. Deutsche Bank Trust Co. Americas, 397 F.Supp.2d 698, 702 (W.D.N.C. 2005) ("[A]s a remand order does not resolve or dispose of the case, the judge need only determine if the magistrate's order is clearly erroneous or contrary to law.") (quotation omitted).

4

## III. DISCUSSION

The Magistrate Judge concluded that the arbitration provision in the Safety Policy is deleted by the Royal umbrella policy "for the reasons stated in Defendants' brief." (Doc. No. 36 at 2). The Court therefore turns its attention to Defendants' brief for purposes of reviewing the Magistrate Judge's order.

Defendants make a number of contentions, including that: (1) the Safety Policy does not contain an agreement to arbitrate based on the plain meaning of the policy and Endorsement #1; (2) there is no basis to stay litigation when the parties did not agree to arbitrate; and (3) the court cannot compel arbitration in St. Louis or Charlotte. (Doc. No. 29). Because the Court finds that the Magistrate Judge's conclusion that the arbitration clause "varies" from the umbrella policy is not clearly erroneous or contrary to law, the Court **AFFIRMS** the Magistrate Judge's order, (Doc. No. 36).

### A. New York Law Applies.

Courts "should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, Inc. v. Kaplan, 415 U.S. 938, 944 (1995). A federal court applies the choice of law rules of the state in which it sits. Klaxon v. Stentor Elec. Mf. Co., 313 U.S. 487, 496 (1941). North Carolina choice of law rules follow the principle of *lex loci contractus*—"that the substantive law of the state where the last act to make a binding contract occurred, usually delivery of policy, controls the interpretation of the contract." SPX Corp. v. Liberty Mut. Ins. Co., 709 S.E.2d 441, 448 (N.C. Ct. App. 2011) (quotation omitted) (holding that New York law applied

5

when policies were delivered and accepted by designated insurance broker located in New York City).

From 1976 to 1984, GST's general liability coverage for GST Asbestos Claims was provided under the policies issued to GST's parent company, Coltec. (Doc. No. 30 ¶ 9). Among the two dozen excess policies for the 1983–1984 policy period was the Safety Policy issued by Plaintiff. (Id. ¶ 12). Defendants' Answer to the Amended Complaint includes Exhibit #3, the Safety Policy. The policy lists the addresses of the policy holder, Colt Industries (Defendant's parent company), and broker in New York. (Doc. No. 16-4 at 2). Because the Safety Policy transaction occurred in New York, interpretation of the Safety Policy is governed by New York law.[1]

B. The Magistrate Judge's Order Properly Denied Plaintiff's Motion to Stay.

Plaintiff objects to the Magistrate Judge's Order interpreting Endorsement #1 and refusing a stay in litigation. The Court finds the Magistrate Judge's reading is consistent with the ordinary meaning of the policy language.

Under New York law, insurance policies are interpreted according to

---

[1] Even if the Court were to use North Carolina law to interpret the Safety Policy, North Carolina and New York law on contract interpretation is substantively similar. Plaintiff acknowledges this. See (Doc. No. 37 at 4) ("Given that the law of North Carolina and New York appears to be the same as to issues of contract interpretation, the Court need not delve into a lengthy choice of law analysis to resolve the matter before it."). Therefore, even if the Magistrate Judge had used North Carolina law to interpret the Safety Policy, the conclusion would remain the same. See In re Viking Pump Inc., 52 N.E.3d 1144, 1151 (N.Y. 2016) ("The language of contracts must be interpreted according to common speech . . . ."); accord C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 388 S.E.2d 557, 563 (N.C. 1990) (stating "non-technical words . . . are to be given their meaning in ordinary speech").

ordinary rules of contract interpretation. See, e.g., Olin Corp. v. Am. Home Assurance Co., 704 F.3d 89, 98 (2d Cir. 2012). "As a general matter, the objective of contract interpretation is to give effect to the expressed intentions of the parties." Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir. 1989).

Laptop Plaza, Inc. v. Starr Indemnity & Liability Company, 2016 WL 10703151, at *4 (S.D.N.Y. Aug. 17, 2016). "When construing insurance policies, the language of the contracts must be interpreted according to common speech and consistent with the reasonable expectation of the average insured." In re Viking Pump, Inc., 52 N.E.3d 1144, 1151 (N.Y. 2016) (internal citation and quotation marks omitted). Additionally, "language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation." Hunt Ltd. V. Lifschultz Fast Freight, Inc., 889 F.3d 1274, 1277 (2d Cir. 1989). Courts often turn to the dictionary definition of a term to discern its ordinary meaning. See, e.g., Ragins v. Hospitals Ins. Co., Inc., 4 N.E.3d 941, 942 (N.Y. 2013) (using dictionary definition of a term when the excess policy did not define the contractual term).

Plaintiff argues that "vary" in Endorsement #1 means "to make different from one another." (Doc. No. 37 at 7) (citing Webster's New World Dictionary (2d College ed. 1980)). Defendants argue that "vary from" means "to be different" or to "deviate" from something else. (Doc. No. 41 at 8) (citing Webster's Third New Int'l Dictionary (2002)). Relying on this definition, Defendants argue that the Safety Policy "varies" from the Royal umbrella policy because a contract with an arbitration policy differs or deviates from a contract that has no requirement for alternative dispute resolution.

7

(Doc. No. 41 at 8). The Magistrate Judge found Defendants' reasoning persuasive and reached the same conclusion. The Court finds that the Magistrate Judge's reading of Endorsement #1 is not clearly erroneous nor contrary to law but represents a reasonable interpretation of the Endorsement terms. This is especially true when considering the "follow-form" nature of the Safety Policy. Endorsement #1 clearly conforms the Safety Policy to the Royal policy "except only with respect for policy period, premium and limit of liability." (Doc. No. 16-4 at 6); see also Union Carbide Corp. v. Affiliated FM Ins. Co., 947 N.E.2d 111, 113 (N.Y. 2011) ("follow-the-form clause[s] … serve the important purpose of allowing an insured, like UCC, that deals with many insurers for the same risk to obtain uniform coverage, and to know, without a minute policy-by-policy analysis, the nature and extent of that coverage."); Playtex FP, Inc. v. Columbia Casualty Co., 622 A.2d 1074 \*, 1992 Del. Super. LEXIS 262 (Del. Super. Ct. May 21, 1992) ("The result of the follow form provisions is to cancel the excess policies' language, except for limits, premium, and any other specified exclusions, and replace it with the language of the Mission policy."). The arbitration clause does not fall within any of the exempted categories and varies from the underlying Royal Policy.

Plaintiff contends in its objections that "vary" presupposes a corresponding term or condition to compare. (Doc. No. 37 at 6–7). Assuming, *arguendo*, this contention, Plaintiff's argument nonetheless fails. The alternative dispute resolution clause in the Safety Policy corresponds to the implied judicial dispute resolution condition in the Royal policy. While not stated explicitly, the right to judicial dispute

resolution is clearly implied between two parties entering into a contract and a basic cannon of contract law. Therefore, the Magistrate Judge correctly concluded that the arbitration provision in the Safety Policy is deleted by the Royal umbrella policy, and the Magistrate Judge's Order Denying Plaintiff's Motion to Stay and Compel Arbitration is adopted.

IV. **CONCLUSION**

**IT IS, THEREFORE, ORDERED** that:

1. Safety National Corporation's Motion to Stay and Compel Arbitration, (Doc. No. 17) is **DENIED**; and

2. The Magistrate Judge's Order is **AFFIRMED**.

Signed: August 20, 2018

Robert J. Conrad, Jr.
United States District Judge